SCHULER (UNITED STATES v.). See Case No. 16,234.

SCHULTZ (BALDWIN v.). See Case No. 804.

---

## Case No. 12,488.

SCHULTZ v. BOSMAN.

[5 Hughes, 97.]

District Court, D. Maryland. Nov. 1, 1879.

ADMIRALTY—JURISDICTION—LIBEL IN PERSONAM—SHIPPING—AUTHORITY OF MASTER—VESSEL IN HOME PORT.

[1. A court of admiralty has jurisdiction to enforce the liability of the owner of a vessel for materials and supplies, by libel in personam, without regard to the existence of a lien on the vessel for such materials and supplies.]

[2. The master of a vessel has authority to bind the owner for repairs and supplies, not unusual in amount and necessary for the vessel, even when she is in her home port, if the owner does not reside at such port, and is not within easy access of it.]

[3. The master of the schooner C., a vessel registered in the district of Maryland, while she was lying at Baltimore, purchased, on the credit of the owner, a pair of side lights and a fog bell, which were necessary for the navigation of the schooner. The owner resided in Crisfield, Md., a place not easy of access from Baltimore. Held, that the master had authority to bind the owner.]

[This was a libel by Alexander H. Schultz against Edward Bosman, owner of a domestic vessel, for supplies purchased by the master.]

MORRIS, District Judge. This is a libel in personam against the owner of the schooner Clara, of Crisfield, Md., to recover for supplies furnished the schooner by direction of the master while she was lying in the port of Baltimore; the owner being a resident of Somerset county, Maryland. The sale and delivery of the articles for the payment of which this action was brought was fully proved; they were principally a pair of side lights and a fog bell furnished the schooner Clara, and were articles necessary for her navigation, indeed without those just mentioned she would have been liable to serious penalties under the United States Revised Statutes. They were purchased by the master upon the credit of the owner; and this suit is resisted upon the ground that the schooner being a vessel registered in Maryland was, when lying at Baltimore, in a home port, and that the master had not therefore authority to bind the owner for repairs or supplies.

It certainly has been held that the master has not usually authority to pledge the credit of the owner for necessary repairs made at the home port where the owner resides and can be consulted and can personally interfere, unless the owner has held out the master as having such authority or has ratified his contracts. The reason of this is, that the foundation and nature of the authority of the master arises from the requirements of the peculiar and responsible duties of his position, and his authority must be commensurate with those duties; when the reason for his authority disappears, then his authority ceases. Therefore the authority of the master to bind the owners of the vessel is more extensive abroad than in a home port. In foreign ports (and ports of states other than those where the vessel belongs are for that purpose considered foreign ports) it is uniformly held that the master has authority to contract on the credit of the owner for such supplies and repairs as are reasonably fit and proper for the ship and the voyage. This authority arises from the necessity of procuring the supplies, the absence of the owner, and the presumption that if he had been consulted he would as a prudent man have pro-

cured them, and would not have allowed the voyage to be broken up or the ship to suffer for want of them.

It is only so far and just to the extent that the reason and necessity for such authority ceases in a home port that the authority of the master is restricted. It is no inflexible rule arising from statutory legislation or any question of jurisdiction, and the restriction should not be pushed further than the reasons of it require. When therefore, although the port where materials or supplies are furnished may be in one sense a home port, if it is not the port where the owner resides and if he is not within easy access of it, and the repairs or supplies are not unusual in amount and are such as a reasonable and prudent owner would have sanctioned if present, I think the master must be held to have power to bind the owner. Of course the supplies and repairs which are reasonably fit and proper under such circumstances for the master to contract for upon the credit of the owner without consulting him are much more restricted as to kind and amounts than would be the case in a foreign port, and greater caution and inquiry in giving the credit should be exercised by the material man before furnishing them.

In the case under consideration the owner lived at Crisfield, a place not of easy access from Baltimore, and the supplies were such as were indispensable to the navigation of the vessel, and they were furnished on the credit of the owner, the master having no credit. They were not provisions to be consumed by the crew, but articles which went to the equipment of the vessel, and the owner presumably got the benefit of them.

It was suggested by the respondent that he should not be held liable as owner of the vessel because he had agreed with his brother, who was master, to sell the vessel to him; but it is conceded that he continued to be the registered owner and that his brother not being able to pay for the vessel, the agreement of sale was subsequently rescinded between them, no change having been made in the registry. Having held himself out to the public as owner, and having put in his brother as master and suffered him to remain without notice of any change, no such private understanding between them which they could set up or rescind at pleasure and without notice to anyone, can affect the rights of the libellant.

In the argument of this case a question has been raised as to the jurisdiction of this court to entertain an action in personam for such a cause of action where there is no privilege or lien in rem on the vessel. It was argued with great earnestness and with many references to authorities, and as the question is an important one, applying to many cases pending in this court, I have considered it with care, although I never supposed there could be doubt with regard to it at this day. It was asserted that by decisions with regard to jurisdiction of admiralty courts and particularly by Dr. Lushington, the doctrine had been established that

no suit could ever be maintained against the ship if the owners were not personally liable, and vice versa that in no case where the ship was not liable could the owners be held in personam; and that this doctrine had been recognized by the supreme court in the changes they have from time to time made in the twelfth admiralty rule, and by the opinion delivered by Mr. Justice Johnson in Ramsey v. Allegre, 12 Wheat. [25 U. S.] 613.

I do not find this proposition supported by the weight of authority in this country. Mr. Justice Story, delivering the decision of the supreme court in The General Smith, 4 Wheat. [17 U. S.] 438, says: "No doubt is entertained by this court that the admiralty rightfully possesses a general jurisdiction in cases of material men, and if this suit had been a suit in personam there would not have been any hesitation in sustaining the jurisdiction of the court." And he then proceeds to dismiss the libel in rem, because being a domestic vessel the material man had no lien upon the ship. In the opinion delivered in 1827 by Mr. Justice Johnson in Ramsey v. Allegre [supra], speaking for himself, but not for the court, they having put their decision upon a different ground, he repudiates the doctrine just above quoted from the opinion of Mr. Justice Story, and in a most learned and lengthy discussion endeavors to establish the doctrine contended for by counsel in this case, but I do not find that his views have ever been sanctioned or approved by the court in any subsequent case; on the contrary, it is apparent that they have constantly taken for granted that such was not the law governing admiralty practice and jurisdiction in this country. Chief Justice Taney, thirty-four years later, delivering the opinion of the supreme court in the year 1861, in the case of The St. Lawrence, 1 Black [66 U. S.] 529, said: "In the case of a foreign vessel the repairs and supplies are presumed to be furnished on the credit of the vessel, but in the case of a domestic vessel the supplies are presumed to be furnished on the personal credit of the master or owner, and where the local law gives the party no lien he must seek his remedy against the person and not against the vessel. In either case the contract is equally within the jurisdiction of a court of admiralty." In 1874, in the case of The Lottawanna, 21 Wall. [88 U. S.] 559, Mr. Justice Clifford in his dissenting opinion says: "Contracts or claims for services or damage purely maritime and concerning rights and duties appertaining to commerce and navigation are properly cognizable in admiralty, and this without regard to whether by the maritime law a privilege or lien is given upon the ship or not, and it is beyond dispute that a contract for necessary repairs or supplies is a maritime contract whether the vessel was at home or abroad when the repairs or supplies were made."

I think it is clear that the action in personam is the general remedy in admiralty of

the material man in all cases, he having also in certain cases and subject to certain limitations a further and more effective remedy by virtue of a lien on the ship. 1 Conk. Adm. 76. The ground of the action is in the liability of one person to respond to another and the court may enforce it against the person or against a particular portion of his property or against his property generally as the law may have provided the right. Ben. Adm. § 304. See, also, sections 269 and 270.

One very great reason for denying the maritime lien or privilege on the ship in case of domestic repairs and supplies (unless given by the local law which usually requires notice to be given by recording) is that it is a secret lien and that the rights of persons who invest their money in the purchase or loan money on mortgages of such ships are put in jeopardy, but there is no such objection to a right of action against the owner in personam. The very ground upon which a lien or privilege upon the ship is given in a foreign port is that the master was not able to procure the supplies upon the credit of the owner. If the claimant of a ship libelled by a material man can show that the master could have obtained the supplies and repairs on the credit of the owner and that the material man knew such to be the fact then the libel in rem cannot be maintained, but a libel in personam against the owner could be.

So far as I can find, although from time to time the attempt has been made to fasten such a doctrine upon the admiralty courts of this country, at no time has it ever been held that their jurisdiction is restricted to cases in which there is a right to proceed in rem. The quotations I have made from decisions of the supreme court show that whatever may have been at times the individual views of dissenting justices the court has always upheld the contrary doctrine. It is an error I think to suppose that the twelfth admiralty rule gives it recognition. In the rule of 1844, the proceeding in rem was allowed in cases of domestic ships where by the local law a lien is given. The rule is silent as to the action in personam, but the action in personam was not forbidden. It was in fact constantly used. By the rule of 1859 the proceeding in rem was disallowed and that is the whole effect of the alteration. The rule of 1872, is general in its terms, giving to all material men, whether against foreign or domestic ships, their option to proceed either in rem or in personam. But of course only where under the law in admiralty they have the right. The changes in the rule never proposed to give or to take away any right, but merely to declare that if the material man under the state law had a lien on the ship he might proceed or that he should not proceed to enforce it in admiralty.

The doctrine in this point declared by Dr. Lushington to be the law of the English admiralty courts as well as the other question to be decided in this case are fully discussed by Judge Shipman, in the case of Fox v. Holt [Case No. 5,012]. He says: "Some of the articles charged for are of a character pertaining to what may be called the furniture and implements for necessary and permanent use on board the vessel." They were articles required for immediate use and though furnished at a home port it was at a place 20 miles distant from the residence of the principal owner. Such articles immediately needed for current use I think the master could in the absence of funds in his hands obtain even in a home port at this distance from the owner upon the credit of the owner.

It is laid down by Dr. Lushington in the case of The Druid, 1 W. Rob. Adm. 391, that no suit could be maintained against the ship if the owners were not liable, and that if the ship is not liable the owners are not, and vice versa. It is clear that the master can create no lien on the ship for repairs in the home port where her owners reside unless it is recognized by the law of that state; but can he not bind the owners personally? The authorities are not uniform or consistent but they undoubtedly imply exceptions to the rule laid down by Dr. Lushington, and their general tendency is to support the doctrine that the owners are personally responsible for such repairs and supplies ordered by the master, as are reasonably fit and proper and apparently necessary to enable the vessel to navigate the sea and perform her voyage in safety, though obtained in a home port, and especially in one at some distance from that at which the owners reside.

I will sign a decree in favor of the libellant for the amount claimed and costs.